FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

97 APR 29 AM 11: 33

U.S. DISTRICT COURT
N.D. OF ALABAMA

Lillian Young,                )
    Plaintiff(s);           )
                            )
-vs.-                         )   No. CV 95-P-2935-W
                            )
DCH Regional Medical Center,  )
    Defendant(s).           )

ENTERED

OPINION

APR 29 1997

After consideration of the arguments and evidence submitted at the Court's March Motion Docket and for the following reasons, the Defendant's Motion for Summary Judgment is hereby GRANTED.

### Facts[1]

The Plaintiff Lillian Young ("Young") was employed by the Defendant DCH Regional Medical Center ("DCH") as a cytotechnologist and was promoted to Supervisor of Cytology in 1992. The cytology laboratory staff consisted of Young and one other cytologist, Scott Fulgham. In April 1994, Young applied for and was granted an indefinite leave of absence because she was undergoing treatment for breast cancer. At the time Young was granted her leave of absence, DCH's leave policy allowed for extended leave of up to twelve months. The policy also provided that, if employees were on leave for longer than three months, they would not be guaranteed re-employment or re-employment in the same position but would be given preference if the position was still available when the employee was ready to return to work. Young underwent surgery in

---

1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the Plaintiff.



early 1995 for a condition unrelated to her cancer treatment and she extended her indefinite leave until May 28, 1995. In March 1995, while Young was still on her indefinite leave of absence, DCH offered the position of Supervisor of Cytology to Freddica Pulliam, another cytologist. DCH informed Young about Pulliam's hiring. Young was also informed that she would have the opportunity to return to a staff position at the same salary she made as a supervisor.

On May 2, 1995, Young sent an application for employment to DCH applying for the position of Supervisor of Cytology. At the time she sent the application, Young knew that the position had been offered to Pulliam and that no other Supervisor of Cytology position was available. Young also stated that at the time she made this application she had not obtained a release to return to work or submit a doctor's release. She was notified by DCH that no position as Supervisor of Cytology was available at that time. In the Summer and Fall of 1995, DCH offered Young positions as a staff cytologist which had become available. Young refused these positions. DCH has produced evidence that the ctytology laboratory was understaffed and that Fulgham was planning on leaving DCH to pursue other opportunities.

Young filed a complaint alleging violations of the Americans with Disabilities Act ("ADA") in the terms and conditions of her employment due to her perceived disability. Young has also claimed violations of the Age Discrimination in Employment Act ("ADEA") alleging that she was replaced by a less experienced and younger individual.

## Analysis

A. The ADA Claim

In order to prevail under the ADA, plaintiffs must establish a prima face case. *See, e.g., Morisky v. Broward County*, 80 F.3d 445 (11th Cir. 1996). A prima facie case is established by

showing (1) the plaintiff had a disability known to the employer; (2) the plaintiff is qualified to perform the essential functions of her job; and (3) an inference can be drawn that the plaintiff was subjected to discrimination because of her disability. *Morisky*, 80 F.3d at 447. A qualified individual is defined as one with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8). If the individual cannot perform such functions, the inquiry then turns to whether the individual can perform them with a reasonable accommodation. Under the ADA, the employee has the responsibility to request an accommodation at the time the disability presents a problem. *See, e.g., Fussell v. Georgia Ports Authority*, 906 F. Supp. 1561 (S.D. Ga. 1995); *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928 (7th Cir. 1995).

DCH argues that Young was not a qualified individual with a disability because, at the time the decision was made to hire Pulliam, Young could not perform the essential functions of her job. DCH offers evidence from Young's deposition in which she admits she was totally disabled at that time. She stated that she could not drive, walk or get down stairs. She admitted that she was not released by her physician to return to work until late May 1995. She also stated that, during the entire time of her absence, she was receiving total disability benefits from her private insurance carrier and had applied for total disability benefits under Social Security which were paid to her disability insurer. DCH has also articulated a non-discriminatory reason for her replacement. DCH has produced evidence that the cytology laboratory was understaffed and needed an additional cytologist because of the imminent departure of Fulgham.[2]

---

2. Leaving a position open for an indefinite period of time is generally not a reasonable accommodation. *See, e.g., Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996); *Myers v. Hose*, 50 F.3d 278 (4th Cir. 1995).

Young argues that she could have performed the essential functions of her job with some accommodations. In her brief, Young argues that she spoke with Dr. Koenenman, Chief of Pathology, about the knee surgery she had in January 1995 and that he must have known that accommodations were possible. However, Young admits that she never requested an accommodation from DCH which would have allowed her to return to work and she produced no compenent evidence that anyone at DCH knew that an accommodation would have allowed her to return. She argues in her brief that Koenenman had apparent authority to bind DCH and that therefore his knowledge of her condition would be imputed to DCH, who failed to propose any accommodation. Young produces no evidence of such a relationship between Koenenman and DCH nor does she offer any evidence of why she did not inform DCH about any change in her condition which might have allowed her to return to work prior to the end of her leave.

Based on the evidence submitted, Young has failed to establish a prima facie case under ADA. Young has admitted that she was not able to perform the essential functions of her job at the time she was replaced. Young has also admitted that she never requested an accommodation from DCH which might have allowed her to return.[3] Young has also failed to offer substantial evidence that the proffered reason for her replacement is pretextual.

Alternatively, Young is estopped from claiming that she was a qualified individual under

---

3. In a declaration, Young claims that if she had been asked she would have suggested several possible accommodations. However, in the absence of her request for any accommodation, an after-the-fact request is not sufficient to impose liability on an employer. *See, e.g., Fussell v. Georgia Ports Authority*, 906 F. Supp. 1561 (S.D. Ga. 1995).

4

ADA due to her application for and acceptance of total disability benefits under Social Security.[4/] *See, e.g., Taylor v. Food World*, 946 F. Supp. 937, (N.D.Ala. 1996).

To the extent that Young is claiming that her application was wrongfully rejected, there is no evidence that Young was discriminated against in her later application for a position as Supervisor of Cytology. Young has offered no evidence that at the time of her application a position as Supervisor of Cytology was available but was denied to her. Young knew at the time of the application that no such position was available. In fact, the evidence that has been introduced indicates that Young never informed DCH that she would be interested in a position as a staff cytologist. Evidence has been submitted, however, that when a staff cytologist position became available DCH contacted her about it and offered her the position at her former pay rate.

B. The ADEA Claim

In light of Young's admission both in her deposition and her brief that she cannot establish a claim under ADEA, the Defendant's motion for summary judgment is due to be granted as to the ADEA claims.

## Conclusion

Based on the lack of evidence on the ADA claims and Young's admission of her inability to establish an ADEA claim, the Court finds that no genuine issues of material fact remain in the case. Therefore, DCH's Motion for Summary Judgment is due to be granted.

---

4. Young seems to argue that she avoids estoppel because the disability insurance carrier required that she apply for the benefits so that the carrier could receive some reimbursement for the payments made to her. This argument is without merit because it would simply punish employers who provided disability coverage to their employees. Young made the application under Social Security and attested to the fact that she was totally disabled at that time. There is no logical distinction between her receipt of the social security benefits directly or through her insurance carrier. Whether at the request of her carrier or not, she voluntarily made such representations to the Social Security Administration when she made her application.

Dated: 4-29-97

                                                     _____
                                                     Chief Judge Sam C. Pointer, Jr.

Service List:
  Ms. Fern Singer
  Ms. Frances Heidt
  Ms. Gail C. Washington
  Mr. Roy W. Scholl, II
  Mr. Kurt A. Powell
  Ms. Sherry D. Moss
  Mr. W. Christopher Arbery